| | |
|---|---|
| 1 | Michael F. Ram (SB#104805) |
| | mfr@lrolaw.com |
| 2 | Amy G. Chen (SB#245771) |
| | achen@lrolaw.com |
| 3 | LEVY, RAM & OLSON |
| | 639 Front Street, Fourth Floor |
| 4 | San Francisco, California 94111 |
| | Telephone: (415) 433-4949 |
| 5 | Facsimile: (415) 433-7311 |
| 6 | Counsel for Plaintiffs |
| | MARGARET A. GONZALES and |
| 7 | BILLY JOE PATTON, JR., |
| | on behalf of themselves |
| 8 | and all others similarly situated |
| 9 | *Additional Counsel Appear on Signature Page* |

FILED
2007 MAY 15 PM 3:31

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET A. GONZALES and BILLY JOE PATTON, JR., on behalf of themselves and all others similarly situated, and on behalf of the general public, | NO. C07-02580 EMC |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** |
| v. | |
| GENERAL MOTORS CORPORATION, a Delaware corporation, and ONSTAR CORPORATION, a Delaware corporation, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

### INTRODUCTION

1.  Plaintiffs Margaret A. Gonzales and Billy Joe Patton, Jr. bring this action for themselves and on behalf of all similarly situated persons who purchased or leased certain cars,

---

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1

1  light pick-up trucks or sport utility vehicles manufactured by Defendant General Motors
2  Corporation ("GM") that were sold with analog-only OnStar systems. OnStar Corporation
3  ("OSC") is a wholly-owned subsidiary of GM engaged, among other things, in the business of
4  providing OnStar services.

5    2.    OnStar is a subscription-based communications, monitoring and tracking service
6  that is provided by GM and/or OSC on certain cars designed, manufactured and sold by GM.
7  OnStar is only available for use with vehicles with factory-installed OnStar hardware (the
8  OnStar subscription and the OnStar hardware are collectively referred to as the "OnStar
9  System").

10    3.    The OnStar System is a safety and security system and Defendants have
11 marketed safety and security features of the OnStar System, including providing critical
12 communications links among drivers, emergency medical service providers and emergency
13 dispatch providers, public safety, fire service and law enforcement officials, and hospital
14 emergency and trauma care facilities. The OnStar System enables owners to (1) communicate
15 with central calling centers regarding technical and other safety issues regarding their vehicle's
16 operations; (2) communicate with emergency roadside assistance providers; (3) communicate
17 automatically with OSC when air bags in the vehicle are deployed; (4) track vehicles when they
18 are stolen; (5) remotely unlock doors; and (6) perform certain vehicle diagnostic procedures
19 remotely. The OnStar System provides other potential services, including hands free calling
20 and a variety of information and/or entertainment services. Beginning in 1996, GM began
21 marketing cars with the OnStar System, and has over time expanded the models equipped with
22 the OnStar System. Plaintiffs are informed and believe, that for the 2003 model year, 44 of 60
23 GM models sold in the United States were available with OnStar.

24    4.    The OnStar hardware was originally designed to communicate with analog
25 cellular communications networks. Beginning with the 2002 model year, GM began installing
26 in some, but not all, models, OnStar hardware designed to communicate with analog cellular
27

---

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1  telephone networks that could be upgraded to communicate with digital cellular
2  communications networks. GM continued to sell some models with analog-only systems that
3  were not upgradeable through the 2004 model year. Unlike the earlier vehicles, these
4  convertible system vehicles were not designed only to communicate with analog cellular
5  communications networks, but rather could be converted from analog to digital cellular
6  communications networks. Eventually, GM began installing OnStar hardware that could
7  operate on both analog and digital cellular communications systems.

8      5. In May 2001, pursuant to a year 2000 Biennial Review of Regulations, the
9  Federal Communications Commission proposed changes to regulations governing cellular
10 service. The existing regulations required cellular telephone companies to operate an analog
11 cellular communications network in addition to any digital cellular communications network
12 they operated. The new regulations, which were adopted in September 2002 after the requisite
13 notice and comment period, allowed cellular telephone companies to discontinue their analog
14 networks beginning in 2008.

15     6. As a result, after January 2008 analog-only OnStar hardware will no longer
16 connect to OnStar. Any OnStar Systems utilizing analog-only hardware will cease to function
17 since no cellular telephone company intends to continue to provide analog service nationwide.

18     7. For years, Defendants have designed, manufactured, distributed, sold and leased
19 cars, light pick-up trucks and sport utility vehicles that contained an analog-only version of the
20 OnStar System (the "OnStar vehicles") that after January 2008 will no longer enable customers
21 to communicate with and take advantage of the OnStar System for the life of the vehicle.
22 Owners of OnStar vehicles will lose the safety and security features they believed they were
23 purchasing when they bought the OnStar vehicles.

24     8. On information and belief, Defendants have known since at least 2001 that the
25 OnStar vehicles' OnStar Systems would likely be useless after January 2008. Nevertheless,
26
27

1  Defendants have actively concealed and failed to disclose this failing from Plaintiff and the
2  Class Members at the time of purchase or lease and thereafter.

3  9.  Despite knowledge of the impending uselessness of the analog-only OnStar hardware, Defendants have not recalled the OnStar vehicles to provide a suitable repair or replacement of existing analog-only OnStar hardware to allow the OnStar System to continue functioning after January 2008, and have not offered to reimburse owners and leaseholders who incurred costs relating to repair or replacement of the OnStar System with a suitable alternative.

8  10.  As a result of the limitations in the OnStar vehicles' OnStar Systems, Plaintiffs and the Members of the Class have suffered damages.

## PARTIES

11.  Plaintiff Margaret A. Gonzales is a California citizen who resides in Alameda County, California. Ms. Gonzales purchased a new Pontiac Grand Prix from a GM dealer in July 2001 with OnStar hardware factory-installed. Ms. Gonzales subscribed to OnStar services at the time of purchase, and has at all times since 2001 been a subscriber of OnStar services.

12.  Plaintiff Billy Joe Patton, Jr. is a California citizen who resides in Santa Clara County, California. Mr. Patton purchased a new GMC Denali from a GM dealer in 2002 with the OnStar hardware factory-installed. Mr. Patton subscribed to OnStar services at the time or purchase, and has at all times since 2002 been a subscriber of OnStar services.

13.  Defendant General Motors Corporation ("GM") is a Delaware corporation with its headquarters and principal place of business in the State of Michigan. Defendant does business in the state of California. Defendant designs, tests, manufactures, distributes, sells and leases OnStar vehicles under several prominent brand names, including, but not limited to GMC, Chevrolet, Buick, Cadillac and Pontiac throughout the United States.

14. Defendant OnStar Corporation ("OSC") is a Delaware corporation and a wholly-owned subsidiary of GM. OSC does business in the state of California. OSC, among other things, provides OnStar subscription services.

## JURISDICTION

15. This is a class action.

16. Members of the proposed Plaintiffs' Class are citizens of California, a state different from the home state of Defendants.

17. On information and belief, the aggregate claims of individual Class Members exceed $5,000,000, exclusive of interest and costs.

18. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

19. Plaintiff Margaret A. Gonzales resides in this judicial district.

20. Defendants, through their business of distributing, selling and leasing OnStar vehicles and providing OnStar subscription services, have established sufficient contacts in this district such that they are subject to personal jurisdiction here. Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(c).

21. In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## APPLICABLE LAW

23. California state law applies to all claims in this action.

## FACTUAL ALLEGATIONS

24. GM designed, manufactured, distributed, sold and leased the OnStar vehicles. Upon information and belief, it has sold, directly or indirectly through dealers and other retail outlets, hundreds of thousands, if not millions, of OnStar vehicles in California and nationwide. During this same time OSC has worked with GM to provide subscriber services for the OnStar System and jointly market OnStar.

25. The OnStar System will become inoperable on OnStar vehicles using analog-only hardware beginning in January 2008.

26. Defendants have described the OnStar System as a safety and security system. The OnStar Owner's Guide, provided when the OnStar Vehicle is purchased, states that the system is "Putting safety, security and convenience at your fingertips." Among the features of the OnStar System is the ability to utilize the system with voice commands. This is important because it helps the driver maintain control of the vehicle as a top priority. The overriding goal is to limit the amount of unnecessary and excessive attention demands on the driver while he or she is driving. This facilitates:

- Minimizing eyes-off-the-road, hands-off-the-wheel time.

- Minimizing the number of steps required to perform a task.

- Creating a common interface in how consumers interact with the system.

- Utilizing a lockout protocol to prevent the use of systems that create unnecessary and excessive attention demands on the driver.

27. OnStar's three-button system is integrated into either the overhead console, the rearview mirror or the instrument panel, depending on the vehicle. The driver communicates with the advisor at the OnStar Center through a hands-free microphone built into the vehicle, and radio speakers carry the advisor's responses. Beginning in January 2008 OnStar vehicles

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

will no longer be able to connect to the OnStar System, eliminating the safety and security features provided by the OnStar System. Many jurisdictions have recognized the safety aspects of operating vehicles in hands-free mode, prohibiting the use of cellular telephones in vehicles without utilizing a hands-free communications device. For example, Connecticut, New York, New Jersey, and the District of Columbia have enacted jurisdiction-wide bans on driving while talking on handheld cell phones and California has passed a similar law that will go into effect in July 2008. These laws reflect the danger posed by driving without the ability to engage communications devices by voice commands. As the Chief State's Attorney for Connecticut said regarding the Connecticut ban, "The purpose of the law is to promote safety on our highways." In addition, without a functioning OnStar System, drivers may not be able to secure roadside assistance when their vehicle needs repairs or to consult with experts regarding issues that arise with their vehicles.

28.     Plaintiffs are informed and believe that at the time of purchase, GM represented on the window sticker that the vehicle had an OnStar Communications System. GM's representation was false and misleading in that it omitted and failed to disclose material facts, including that the OnStar vehicles would only work with analog cellular technology, that although carriers would continue to provide cellular service, they would not be required to provide analog cellular service, and that once cellular service providers offered only digital service, the OnStar vehicles would no longer connect with the OnStar System. Simply put, this statement did not warn consumers that the OnStar Communications System would likely cease to function in January 2008 on OnStar vehicles. The OnStar Owner's Guide stated that "Since OnStar uses cellular technology for communication with the OnStar Center, it can only be operated in geographic areas where cellular coverage is available. Although nearly all of the North American population lives and works in cellular coverage areas, there are various rural and mountainous areas where coverage is marginal or does not exist. Cellular service is also subject to transmission limitations caused by atmospheric conditions." These statements

1  represented that as long as cellular service was available, the OnStar vehicles could connect to
2  the OnStar System. These statements omitted and failed to disclose material facts, including
3  that the OnStar vehicles would only work with analog cellular technology, that although
4  carriers would continue to provide cellular service, they would not necessarily be required to
5  provide analog cellular service, that as a result of possible, pending or actual FCC action
6  cellular providers might not and ultimately were not required to provide analog cellular service
7  in later periods, and that once cellular service providers offered only digital service, the OnStar
8  vehicles would no longer connect with the OnStar System. The statements were false and
9  misleading because although cellular service and coverage is available, the OnStar Systems
10 nonetheless will no longer function as designed and intended. Defendants knew these facts and
11 have known since at least 2001 that the FCC would likely no longer would require cellular
12 providers to provide analog service after January 2008.
13     29.    Defendants are fully aware of the limitations in the analog-only OnStar
14 hardware in the OnStar vehicles. Indeed, Plaintiffs are informed and believe that Defendants
15 knew as early as 2001 that the analog-only OnStar hardware would likely be useless after
16 January 2008. Despite this, Defendants have actively concealed the existence and nature of
17 these limitations from Plaintiffs and the Members of the Class at the time of purchase or lease
18 and thereafter. Specifically, Defendants have:
19     a.  failed to disclose, at and after the time of purchase or lease, that the OnStar
20         vehicles utilized analog-only hardware that would not operate if cellular
21         providers were not required to continue providing analog cellular service;
22     b.  failed to disclose at the time of purchase or lease that the OnStar vehicles,
23         including the OnStar hardware installed in the OnStar vehicles, were of
24         limited usefulness and were not fit for their intended purpose because that
25         safety and security system would likely become useless after January 2008.

      c.  failed to disclose or actively concealed the fact that the OnStar vehicles' OnStar hardware would not be useful if the FCC did not continue to require cellular providers to maintain an analog cellular system;

      d.  failed to disclose or actively concealed that, as Defendants learned as of 2001 that the FCC would likely no longer require cellular providers to maintain an analog cellular system after January 2008.

30. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the OnStar hardware was of limited usefulness until manifestation of the failure of the OnStar System or notification by Defendants. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the limitations in the OnStar system.

31. Defendants have not recalled the OnStar vehicles to correct the limitations in the analog-only OnStar hardware, have not offered to its customers a suitable repair or replacement free of charge, and have not offered to reimburse owners and leaseholders who incurred costs relating to repair and replacement of the OnStar System with a competing system if any such system were available. Defendants have continued to re-subscribe Plaintiffs and members of the Class to OnStar despite their knowledge that Plaintiffs and members of the Class' OnStar Systems will become inoperable in January 2008.

32. The members of the Class have not received the value for which they bargained when they purchased or leased the OnStar vehicles.

33. As a result of the limitations in the OnStar hardware, the value of the OnStar vehicles has diminished.

## TOLLING OF THE STATUTE OF LIMITATIONS

34.  Plaintiffs and the Class were not reasonably able to discover the problem until long after purchasing or leasing the OnStar vehicles, despite their exercise of due diligence.

35.  Plaintiffs and the Class Members had no realistic ability to discern that the OnStar hardware was of limited usefulness until notified of the problem in 2007. In addition, despite their due diligence, Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the OnStar hardware was concealed from them, until manifestation of the limitation or publicity regarding the problem. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

36.  Upon information and belief, Defendants have known of the limitations in the OnStar vehicles and their OnStar hardware since at least 2001, if not earlier, and have concealed from or failed to alert owners and lessees of the OnStar vehicles of the limited usefulness and life of the OnStar hardware and owners inability to continue receiving OnStar services up until providing notifications in 2007 that service would no longer be available in 2008.

37.  Any applicable statutes of limitation have therefore been tolled by Defendants' concealment and denial of the facts alleged here. Defendants are further estopped from relying on any statutes of limitation because of their concealment of the limitations of the OnStar vehicles and their OnStar hardware.

## CLASS ACTION ALLEGATIONS

38.  Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other California residents similarly situated as members of a proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

39. The Class is defined as:

> All persons in California State who purchased or leased a GM vehicle, light pick-up truck or sport utility vehicle of any type that had a factory installed analog-only OnStar system, at any time from May 2001 until that point in 2004 when OnStar disclosed the pending lapse of the analog-only wireless technology service in the Terms and Conditions of its service agreement. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

40. Claims for personal injury are specifically excluded from the Class.

41. Numerosity: Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single class action will provide substantial benefits to all parties and to the Court.

42. Typicality: The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, own OnStar vehicles designed and manufactured by GM in which the OnStar System will become inoperable in January 2008. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they will lose use of the OnStar System in January 2008. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of material omissions resulting in injury to all Members of the Class.

43. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class which predominate over any questions affecting only individual Class Members. These common legal and factual issues include the following.

    a. Whether Defendants knew of the inherent limitations in the OnStar hardware;

    b. Whether Defendants failed to disclose the inherent limitations in the OnStar hardware to Plaintiffs and the Class;

    c. Whether Defendants had a duty to Plaintiffs and the Class to disclose that the analog-only OnStar systems would likely be useless after January 2008;

    d. Whether the facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material;

    e. Whether as a result of Defendants' concealment of or failure to disclose material facts, Plaintiffs and the Class were damaged;

    f. Whether Defendants engaged in unfair competition or unfair deceptive acts or practices when they failed to disclose to Plaintiffs and Class Members the limitations in their OnStar vehicles and OnStar hardware;

    g. Whether Defendants' conduct in marketing, selling and leasing its OnStar vehicles and OnStar System constitutes a violation of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*;

    h. Whether Defendants' conduct in marketing, selling and leasing its OnStar vehicles and OnStar System constitutes a violation of the Unfair Business Practices Act, California Business & Professions Code section 17200 *et seq.*;

    i. Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of OnStar vehicles and analog-only OnStar hardware and/or OnStar subscription fees, or to make full restitution to Plaintiffs and the Members of the Class.

44. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions. Plaintiffs and their counsel are committed to prosecuting

---

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1  this action vigorously on behalf of the Class and have the financial resources to do so. Neither
2  Plaintiffs nor their counsel have any interests adverse to those of the Class.

3    45.    Predominance and Superiority: Plaintiffs and the Members of the Class have all
4  suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and
5  wrongful conduct. A class action is superior to other available methods for the fair and
6  efficient adjudication of the controversy. Absent a class action, most Members of the Class
7  would likely find the cost of litigating their claims prohibitively high and would therefore have
8  no effective remedy at law. Because of the relatively small size of the individual Class
9  Member's claims, it is likely that only a few Class Members could afford to seek legal redress
10  for Defendants' misconduct. Absent a class action, Class Members will continue to incur
11  damages and Defendants' misconduct will continue without remedy. Class treatment of
12  common questions of law and fact would also be superior to multiple individual actions or
13  piecemeal litigation in that class treatment will conserve the resources of the courts and the
14  litigants, and will promote consistency and efficiency of adjudication.

**FIRST CLAIM FOR RELIEF**
**(Violation of California's Consumers Legal Remedies Act,**
**California Civil Code section 1750 *et seq.*)**

18    46.    Plaintiffs hereby incorporate by reference the allegations contained in the
19  preceding paragraphs of this Complaint.

20    47.    Both Defendants are "persons" as defined by Civil Code section 1761(c).

21    48.    Plaintiffs and Class Members are consumers who purchased or leased the
22  OnStar vehicles with analog-only OnStar Systems.

23    49.    By failing to disclose the limitations in the OnStar hardware, Defendants
24  violated Civil Code section 1770(a), as they represented that OnStar vehicles and OnStar
25  hardware in OnStar vehicles had characteristics and benefits that they do not have, and

represented that OnStar vehicles and OnStar hardware in OnStar vehicles were of a particular standard, quality or grade when they were of another. (*See* Civ. Code §§ 1770(a)(5, 7).)

50.  Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a safety risk on the public.

51.  Defendants knew that OnStar vehicles and OnStar hardware had inherent limitations, would stop being of any use prematurely and would become not suitable for their intended use.

52.  Defendants were under a duty to Plaintiffs and the Class to disclose the limited usefulness of the OnStar hardware because:

    a.  Defendants were in a superior position to know the true state of facts about the limitations in the OnStar hardware;

    b.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the OnStar hardware was of limited usefulness until manifestation of the failure of the OnStar System or notification by Defendants; and

    c.  Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the limitations in the system.

53.  In failing to disclose the OnStar hardware limitations, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

54.  The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase OnStar vehicles or pay a lesser price. Had Plaintiffs and the Class known the limited usefulness of the OnStar hardware, they would not have purchased the OnStar vehicles or would have paid less for them and may have sought alternatives to the OnStar services. OSC has collected subscription fees for the OnStar System prior to disclosing

1  to OnStar Vehicle owners that the service would no longer be available to them after January
2  2008.

3     55.    Plaintiffs and the Class reasonably expected the OnStar System to function
4  properly for the life of their vehicles.

5     56.    As a direct and proximate result of Defendants' unfair or deceptive acts or
6  practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

7     57.    Plaintiffs and the Class are entitled to and eligible for injunctive relief.

8     58.    Plaintiffs have provided Defendants with notice of its alleged violations of the
9  CLRA pursuant to Civil Code section 1782(a). If, after 30 days of the date of the notification
10 letter, Defendants have failed to provide appropriate relief for its violation of the CLRA,
11 Plaintiffs will amend this Complaint to seek compensatory, monetary and punitive damages, in
12 addition to equitable and injunctive relief.

### SECOND CLAIM FOR RELIEF
**(Violation of California's Unfair Business Practices Act, California Business & Professions Code section 17200 *et seq.*)**

59.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

60.    California Business & Professions Code section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

61.    Plaintiffs and the Class reasonably expected the OnStar hardware to be able to connect to the OnStar System for the life of their vehicles. This is the reasonable and objective consumer expectation for this safety and security system.

62.    Defendants knew OnStar vehicles and OnStar hardware had inherent technological limitations, would prematurely stop being able to connect to the OnStar System, and were not suitable for their intended use.

63. In failing to disclose the OnStar hardware limitations, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

64. Defendants engaged in unfair competition and unlawful, unfair and fraudulent business acts and practices.

65. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public. OSC has collected subscription fees for the OnStar System without fully disclosing to OnStar Vehicle owners until 2007 that the service would no longer be available to them after January 2008.

66. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

67. Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to sections 17203 and 17204 of the Business & Professions Code.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

68. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

69. Plaintiffs and Class Members did not receive OnStar hardware that could connect to the OnStar System if cellular carriers ceased maintaining an analog cellular network.

70. Plaintiffs and the Class reasonably expected the OnStar hardware to be able to connect to the OnStar System for the life of the vehicles.

71. Defendants and GM's dealers received payment from Plaintiffs and Class Members for the purchase and lease of OnStar vehicles and for subscriptions to OnStar, and wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

72. Defendants' enrichment at the expense of Plaintiffs and Class Members was unjust.

73. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the Class are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Defendants, plus attorneys' fees, costs and interest.

## RELIEF REQUESTED

Plaintiffs, on behalf of themselves and all others similarly situated, requests the Court enter judgment against Defendants, as follows:

74. An order certifying the proposed Plaintiff Class, designating Plaintiffs as named representatives of the Class and designating the undersigned as Class Counsel;

75. A declaration that Defendants are financially responsible for notifying all Class Members of the problems with OnStar vehicles' OnStar hardware;

76. An order enjoining Defendants from further deceptive distribution, sales and lease practices with respect to OnStar vehicles, and to remove and replace Plaintiff's and Class Members' OnStar hardware with a suitable alternative product;

77. An award to Plaintiffs and the Class of compensatory, exemplary and statutory damages, including interest, in an amount to be proven at trial, except that for now, Plaintiffs seek only equitable and injunctive relief with respect to their claims under the California's Consumers Legal Remedies Act, California Civil Code section 1750 *et seq*;

78. A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of OnStar vehicles and/or subscription fees, or to make full restitution to Plaintiffs and the Members of the Class;

79. An award of attorneys' fees and costs, as allowed by law;

80. An award of pre-judgment and post-judgment interest, as provided by law;

1  81.  Leave to amend the Complaint to conform to the evidence produced at trial and

2  82.  Such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

83.  Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: May 15, 2007                    LEVY RAM & OLSON LLP


                                        By:  *Michael F. Ram* (signature)
                                             Michael F. Ram
                                             Amy G. Chen

                                        Kim D. Stephens, WSBA #11984
                                        kstephens@tousley.com
                                        Beth E. Terrell, SB #178181
                                        bterrell@tousley.com
                                        TOUSLEY BRAIN STEPHENS, PLLC
                                        1700 Seventh Avenue, Suite 2200
                                        Seattle, Washington 98101-4416
                                        Telephone: (206) 682-5600
                                        Facsimile: (206) 682-2992

                                        Gary E. Mason
                                        gmason@masonlawdc.com
                                        THE MASON LAW FIRM, PC
                                        1225 19th Street NW, Suite 500
                                        Washington, DC 20036
                                        Telephone: (202) 429-2290
                                        Facsimile: (202) 429-2294

                                        Alexander E. Barnett
                                        abarnett@masonlawdc.com
                                        THE MASON LAW FIRM, LLP
                                        1120 Avenue of the Americas, Suite 4019
                                        New York, NY 10036
                                        Telephone: (212) 362-5770
                                        Facsimile: (917) 591-5227

| | |
|---|---|
| 1 | Kevin L. Oufnac |
| | kevin.oufnac@kgscounsel.com |
| 2 | KAHN GAUTHIER SWICK LLC |
| | 650 Poydras Street, Suite 2150 |
| 3 | New Orleans, Louisiana 70130 |
| | Telephone: (504) 455-1400 |
| 4 | Facsimile: (504) 455-1498 |

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

19