# EXHIBIT B

Eric H. Gibbs (State Bar No. 178658)
  ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
  dsh@girardgibbs.com
Geoffrey A. Munroe (State Bar No. 228590)
  gam@girardgibbs.com
Daniel T. LeBel (State Bar No. 246169)
  dtl@girardgibbs.com
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiff John Irvine

ORIGINAL FILED
07 JUL 16 PH 3:29
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JOHN IRVINE, on behalf of himself and all others similarly situated,

   Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation; and ONSTAR CORPORATION, a Delaware corporation,

   Defendants.

Case No. C 07 3651 MMC

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, DECLARATORY AND EQUITABLE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff John Irvine ("Plaintiff") brings this class action complaint on behalf of himself and on behalf of the proposed Class and Subclass defined herein and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff classes, on the one hand, and Defendants, on the other, are citizens of different states.

2. Venue is proper in this District because Plaintiff resides in this District and Defendants' contacts with the District are sufficient to subject Defendants to personal jurisdiction in this Court.

## INTRADISTRICT ASSIGNMENT

3. Assignment is proper to the San Francisco division of this District under Local Rule 3-2(c)-(d), as this action arises from Contra Costa County. Plaintiff resides in Contra Costa County, Plaintiff purchased his vehicle in Contra Costa County, and a substantial part of the events and omissions which give rise to the claims herein occurred in Contra Costa County.

## NATURE OF THE CASE

4. Defendants equip new vehicles with OnStar systems, which are wireless communications systems that provide a variety of safety, security and convenience services, including: automatic notification of OnStar personnel of air-bag deployment, stolen vehicle tracking, emergency services at the touch of a button, and remote door unlock. Optional features include hands-free telephone calls, turn-by-turn directions, and concierge services. Defendants marketed the OnStar system as a safety benefit that reflects an investment in "peace of mind."

5. Defendants equipped the vehicles sold to Plaintiff and Class members with OnStar systems designed to operate only on an analog network. At the time Plaintiff and the members of the Class purchased their vehicles, Defendants concealed and/or failed to disclose that the OnStar systems were obsolete, and thus defective, in that the analog network would cease to function on January 1, 2008. In other words, at the point of the new vehicle sale, Defendants concealed that it was equipping and selling new vehicles with an obsolete, and thus defective, safety device. Defendants also failed to

tell Plaintiff and Class members that they would not repair or replace the defective OnStar systems under warranty, and that Plaintiff and Class members would have to pay to repair or replace their vehicle's OnStar systems to continue using OnStar services after December 31, 2007. Plaintiff and Class members recently received notice that as of January 1, 2008, they will no longer receive wireless service to their OnStar systems. Defendants refuse to repair or replace the systems under warranty, and refuse to otherwise compensate Plaintiff and Class members for selling them defective merchandise.

## PARTIES

6. Plaintiff John Irvine is a resident of Concord, California.

7. Defendant General Motors Corporation ("GM") is a Delaware corporation, with its headquarters and principal place of business at 300 Renaissance Center in Detroit, Michigan.

8. Defendant OnStar Corporation ("OnStar") is a Delaware corporation, with its headquarters and principal place of business at 300 Renaissance Center in Detroit, Michigan. It is a wholly owned subsidiary of GM.

9. Plaintiff alleges, on information and belief, that at all relevant times each of the Defendants was the agent of the other and in doing the things hereinafter alleged, each was acting within the course and scope of said agency and with the ratification of its respective principals.

## FACTUAL ALLEGATIONS

### Defendants Represented OnStar Systems As State-Of-The-Art Technology That Provides Protection, Security and Peace Of Mind

10. OnStar systems use cellular technology to link the vehicle and driver to OnStar advisors, who offer personalized help to subscribers 24 hours a day, 7 days a week. For example, among OnStar systems' features is a crash notification system that automatically notifies an OnStar Center when the vehicle's air bags deploy. Once notified, an OnStar advisor will attempt to communicate with the occupants of the vehicle. Then the advisor will contact the appropriate emergency service providers and inform them of the exact location of the vehicle based on the GPS signal emitted by the OnStar system.

11. Defendants promoted OnStar systems in product literature, television commercials, print advertising, and on the Internet. Defendants also represented that Class vehicles were equipped with

1  OnStar systems on the window stickers of the vehicles.

2  12. Among other things, Defendants implicitly and/or explicitly represented that OnStar systems would provide twenty-four hour access to trained OnStar advisors, access to emergency assistance, automotive crash notification, stolen vehicle location assistance, and remote door unlock.

**Defendants' Notification Of The Defective OnStar Systems**

13. OnStar systems with analog equipment operate only on the analog wireless network. Defendants are currently notifying owners and lessees of GM vehicles equipped with analog OnStar systems, informing them that the analog OnStar systems will cease functioning at the end of the year, and that they will need to pay for a repair or replacement of their vehicle's defective OnStar systems if they want to receive OnStar services thereafter.

**Defendants Concealed Material Information About The OnStar Systems**

14. In the course of its promotional campaign about OnStar systems, Defendants knew the analog-based OnStar systems would become obsolete, knew that it would be unable to maintain service to analog OnStar systems, and knew that Plaintiff's and Class members' OnStar systems would not last the expected life of their vehicles, yet continued to promote and sell vehicles equipped with OnStar systems without meaningfully disclosing that the analog-based systems would become obsolete, that the OnStar systems would not last the expected life of the vehicle, or that Defendants would refuse to repair or replace the defective OnStar systems under warranty.

**Plaintiff's Experiences**

15. John L. Irvine purchased his 2002 Cadillac Seville SLS from Wayne Stead Cadillac in Walnut Creek, California, in 2002. Defendants equipped Mr. Irvine's vehicle with an analog OnStar system.

16. The safety and security features offered by the OnStar communication system were among the primary reasons Mr. Irvine purchased his vehicle.

17. Defendants recently notified Mr. Irvine that his vehicle is equipped with an analog OnStar system that will cease functioning on or about January 1, 2008, and that in order to continue receiving OnStar services after December 31, 2007, he would have to pay Defendants to repair or replace his OnStar system.

18. Mr. Irvine requested that Defendants repair or replace his OnStar system. Defendants required Mr. Irvine to pay a minimum of $549 (which he paid), ostensibly for a three-year nonrefundable subscription to the OnStar service, before they would repair or replace his OnStar system so that it would function past December 31, 2007.

19. When Mr. Irvine purchased his vehicle, Defendants did not tell him that they were selling him a new vehicle equipped with an obsolete and defective safety device, namely, the OnStar system, nor did Defendants tell him that they would refuse to repair or replace the defective OnStar system under warranty.

## CLASS ALLEGATIONS

20. Plaintiff brings this action against Defendants on behalf of himself and the following class and subclass of similarly situated people, initially defined as:

All individual owners and lessees of GM vehicles equipped with analog OnStar systems for which GM offers an equipment upgrade ("Class").

All individual owners and lessees of GM vehicles registered or sold in California equipped with analog OnStar systems ("California Subclass").

21. Excluded from the Class and California Subclass are all claims for personal injury. Also excluded are business or fleet purchasers of GM vehicles; Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; and any Judge to whom this case is assigned as well as his or her immediate family.

22. This action has been brought and may be properly maintained on behalf of the proposed Class under the criteria of Federal Rule of Civil Procedure Rule 23.

23. **Numerosity of the Class—Fed. R. Civ. P. 23(a)(1).** Members of the Class and California Subclass are so numerous that their individual joinder is impracticable.

24. Although the exact number of Class and California Subclass members is presently unknown, hundreds, if not thousands, of consumers own vehicles with analog OnStar systems, too many to practically join in a single suit.

25. **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and California Subclass and predominate over questions affecting only individual class members. These common questions include the following:

    a. Whether the analog OnStar systems that Defendants placed in Plaintiff's and Class members' vehicles are defective in material and workmanship and, if so, whether Defendants must repair or replace them under warranty, notwithstanding whether the time or mileage limitations of the warranties have lapsed.

    b. Whether by selling OnStar systems that would cease functioning as of January 1, 2008, and failing to repair or replace the OnStar systems, without charge, so that they would continue to offer access to OnStar services, Defendants violated the Magnuson-Moss Warranty Act and/or Song-Beverly Consumer Warranty Act and/or breached its express warranties.

    c. Whether and when Defendants knew or should have known that analog OnStar systems would become inoperable.

    d. Whether Defendants intentionally, negligently or recklessly concealed and/or failed to disclose the pending obsolescence of OnStar systems.

    e. Whether Defendants owed a duty to Plaintiff and the Class and/or California Subclass to disclose the pending obsolescence of OnStar systems.

    f. Whether Defendants were in a superior position to know of the OnStar systems' pending obsolescence.

    g. Whether the facts concealed and/or not disclosed by Defendants to Plaintiff and the Class and/or California Subclass were material.

    h. Whether a reasonable person would have considered the undisclosed facts, including that OnStar systems would not last the life of the vehicle, to be important in deciding whether to purchase an optional OnStar system, or a vehicle equipped with a OnStar system.

i. Whether Plaintiff and the California Subclass justifiably relied to their detriment upon the truth and completeness of the Defendants' representations about the OnStar systems' continued viability.

j. Whether Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

k. Whether Defendants have been or are:

　　i. Representing that goods have approval, characteristics, ingredients, uses, or benefits they do not have;

　　ii. Representing that goods are of a particular standard, quality, or grade when they are of another;

　　iii. Advertising goods or services with intent not to sell them as advertised; and

　　iv. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve.

l. Whether Defendants' acts and/or practices are or were unfair, unlawful, or fraudulent business practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

m. Whether Defendants inserted unconscionable provisions in a consumer contract mandating that California consumers waive substantive and procedural rights.

n. Whether, as a result of Defendants' misconduct, Plaintiff and the Class are entitled to damages, restitution, disgorgement, and/or other relief, including but not limited to injunctive relief, and, if so, the amount and nature of such relief.

o. Whether Plaintiff and the Class are entitled to declaratory relief, attorneys' fees and costs of suit, and interest thereon.

26. **Typicality–Fed. R. Civ. P. 23(a)(3).** Plaintiff is a member of the Class and California Subclass. Plaintiff's claims are typical of the claims of the other class members because each Plaintiff and all class members were injured or are about to be injured by the same wrongful acts and practices in which Defendants engaged, as alleged herein.

27. **Adequacy of Representation—Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class and California Subclass. Plaintiff's interests are coincident with, and not antagonistic to, those of class members. In addition, Plaintiff has retained attorneys who are experienced and competent in the prosecution of complex and class litigation. Neither Plaintiff nor his attorney has any conflict in undertaking this representation.

28. **Superiority—Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. In particular, Plaintiff raises complicated, but uniform, questions that can be resolved in a single action, but that would occupy considerable judicial resources if litigated in separate actions.

29. Class certification is also appropriate because there is an identifiable class and subclass on whose behalf this class action would be prosecuted. Class members are readily ascertainable, as evidenced by the fact that Defendants have been notifying class members that their analog OnStar systems will be inoperative, effective January 1, 2008, and will need to be repaired or replaced to continue receiving OnStar services thereafter. Because the Class is so readily identifiable, this action is also readily manageable as a class action.

30. In the alternative, the Class and California Subclass may be certified because:

   a. The prosecution of separate actions by the individual members of the Class and California Subclass would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

c. Defendants have acted or refused to act on grounds generally applicable to the Class and California Subclass, thereby making appropriate final injunctive relief with respect to the members of the Class and California Subclass as a whole; and

d. The claims of Class members and California Subclass members are comprised of common issues that are appropriate for certification under Rule 23(c)(4).

## FIRST CAUSE OF ACTION

**(For Declaratory Relief Pursuant to 28 U.S.C. § 2201 et seq. by Plaintiff Individually and on Behalf of the Class Against Defendant General Motors)**

31. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

32. An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiff and Defendant GM for which Plaintiff desires a declaration of rights.

33. Plaintiff and each Class member purchased or leased a GM vehicle equipped with a OnStar system. With each purchase or lease, GM provided a new vehicle limited warranty and/or an extended warranty (hereafter, "Warranties"). In general, the Warranties cover repairs to correct any vehicle defect related to materials or workmanship occurring during a stated period of time, which is either measured by mileage or months.

34. Plaintiff contends that the OnStar systems installed in his vehicle and the Class members' vehicles are defective in material and workmanship, in that the OnStar system will cease to function with the OnStar service within the expected lifetime of the vehicle.

35. Plaintiff further contends that at the time he purchased his GM vehicle, and at the time Class members purchased their GM vehicles, GM knew the OnStar systems would need to be repaired or replaced to function after December 31, 2007, yet concealed such information at the time of sale, and continued to conceal such information until the express terms of the Warranties lapsed for some Class

members. Had GM meaningfully disclosed the need for repair or replacement of the OnStar system within the Class members' warranty periods, the Class Members would have demanded that GM repair or replace their OnStar systems within the express terms of their warranty, free of charge and without obligation.

36. Defendants admit that the OnStar systems it placed in Plaintiff's and Class members' vehicles will cease to function as of January 1, 2008, that the OnStar systems must be repaired or replaced so that Plaintiff and Class members can continue using the OnStar service, and that it is capable of repairing or replacing the OnStar systems so that Plaintiff and Class members can continue using the OnStar service. GM contends that this repair or replacement is not covered by its Warranties because it is not required and is not due to any defect in material or workmanship and thus Plaintiff and Class members must pay for a repair or replacement of their vehicle's OnStar system.

37. Plaintiff desires a judicial determination of his rights and duties and a declaration that because the analog OnStar systems installed in the vehicles purchased by Plaintiff and each Class member contained defects in material and workmanship that existed at the time of sale, GM must replace or repair defective parts under the Warranties at no cost or contractual obligation to Plaintiff and each Class member, notwithstanding whether the time or mileage limitations of the Warranties have now lapsed.

38. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff and each Class member may ascertain their rights and duties under the Warranties. At this time, Plaintiff and each Class member have a GM vehicle that is equipped with an analog OnStar system that contains a defect in material and workmanship, such that the analog OnStar systems will cease to function on January 1, 2008. GM refuses to repair or replace Plaintiff's and each Class member's analog OnStar systems under its Warranties. Plaintiff and each Class member are entitled to have their OnStar systems repaired or replaced, free of charge, under the Warranties.

## SECOND CAUSE OF ACTION

**(For Violation of Magnuson-Moss Warranty Act by Plaintiff individually and on behalf of the Class Against Defendant GM)**

39. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

40. OnStar systems and GM vehicles are consumer products under 15 U.S.C. § 2301(1).

41. Plaintiff and Class members are consumers under 15 U.S.C. § 2301(3).

42. Defendant GM is a supplier and warrantor under 15 U.S.C. § 2301(4)-(5).

43. GM provides all purchasers of GM vehicles with Written Warranties as defined by 15 U.S.C. § 2301(6). The Written Warranties certify that the OnStar systems are free from defects in material or workmanship and that the OnStar systems offer access to OnStar services, including emergency aid and roadside assistance, 24 hours a day, 7 days a week. In the Written Warranties, GM also agreed to repair or replace OnStar systems that suffer from any defect in material or workmanship.

44. GM breached the Written Warranties by (a) selling OnStar systems that were defective at the time of sale in that they would cease functioning as of January 1, 2008; and (b) failing to cure the defective condition by repairing or replacing the OnStar systems so that they would continue to offer access to OnStar services.

45. GM knew of the defect in OnStar systems and has had a reasonable opportunity to cure the defect, but has failed to do so. Instead, GM has notified Plaintiff and Class members that it is not going to repair or replace the defective OnStar systems under its Written Warranties, thus Plaintiff and Class members must pay money to have their OnStar systems repaired or replaced if they wish to continue using OnStar services.

46. Resorting to any informal dispute settlement procedure and/or affording GM a reasonable opportunity to cure its breach of written warranties would be futile. GM knew, should have known, or was reckless in not knowing of the defect in its OnStar systems, but nevertheless has failed to repair or replace the defective systems free of charge and has stated that it will not repair or replace the defective systems free of charge. Moreover, the remedies available through any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement that Plaintiff and Class members resort to any informal dispute settlement procedure and/or afford GM a reasonable opportunity to cure its breach of written warranties is excused and, thereby, deemed satisfied.

47. As a direct and proximate result of GM's conduct, Plaintiff and Class members are entitled to legal and equitable relief against GM, including damages, specific performance, a declaration

that GM breached the Written Warranties, attorneys' fees, costs of suit, and other relief as appropriate.

48. Any contractual language contained in GM's Written Warranties that attempts to disclaim express warranties or limit remedies is unconscionable, fails to conform to the requirements for limiting remedies on warranties under applicable law, causes the Written Warranties to fail of their essential purpose, and is therefore unconscionable and void.

## THIRD CAUSE OF ACTION

**(For Breach of Express Warranty by Plaintiff individually and on behalf of the Class Against Defendant GM)**

49. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

50. Defendant GM provided affirmations of fact and specific descriptions (the Written Warranties described above) to all purchasers of GM vehicles equipped with analog OnStar systems, which became part of the basis of the bargain.

51. The analog OnStar systems were manufactured and/or installed in Plaintiff's and Class members' vehicles by GM and are covered by the Written Warranties.

52. GM breached the Written Warranties by (a) selling OnStar systems that were defective at the time of sale in that they would cease functioning as of January 1, 2007; and (b) failing to cure the defective condition by repairing or replacing the OnStar systems so that they would continue to offer access to the OnStar service.

53. GM knew of the defect in OnStar systems and has had reasonable opportunity to cure the defect, but has failed to do so. Instead, GM has notified Plaintiff and Class members that it is not going to repair or replace the defective OnStar systems under its Written Warranties, thus Plaintiff and Class members must pay money to have their OnStar systems repaired or replaced if they wish to continue using OnStar services.

54. Affording GM a reasonable opportunity to cure its breach of written warranties would be futile. GM knew, should have known, or was reckless in not knowing of the defect in its OnStar systems, but nevertheless has failed to repair or replace the defective systems free of charge and has stated that it will not repair or replace the defective systems free of charge.

55. As a direct and proximate result of GM's conduct, Plaintiff and Class members have

1  suffered damages, including the difference between the value of their GM vehicles as promised and the
2  value as delivered, as well as the cost to repair or replace their OnStar systems with systems that will
3  function with the OnStar service.

4  56. Plaintiff and Class members are entitled to legal and equitable relief against GM,
5  including damages, specific performance, a declaration that GM has breached the Written Warranties,
6  attorneys' fees, costs of suit, and other relief as appropriate.

7  57. Any contractual language contained in GM's Written Warranties that attempts to
8  disclaim express warranties or limit remedies is unconscionable, fails to conform to the requirements
9  for limiting remedies on warranties under applicable law, causes the Written Warranties to fail of their
10  essential purpose, and is therefore unconscionable and void.

## FOURTH CAUSE OF ACTION

(Violation of the California Song-Beverly Consumer Warranty Act by Plaintiff individually and on behalf of the California Subclass Against Defendant GM)

58. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

59. OnStar systems and GM vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

60. Plaintiff and California Subclass members are "buyers" within the meaning of Cal. Civil Code § 1791(b).

61. Defendant GM is a "distributor," "lessor," "manufacturer," and/or "retail seller" within the meaning of Cal. Civ. Code § 1791(e), (i), (j), and (l).

62. Plaintiff's and California Subclass members' purchases of GM vehicles equipped with OnStar systems are "sales" within the meaning of Cal. Civ. Code § 1791(n)(1).

63. The Written Warranties described above constitute "express warranties" within the meaning of Cal. Civ. Code § 1791.2.

64. GM failed to comply with its obligations under the express warranties by (a) selling OnStar systems that were defective at the time of sale in that they would cease functioning as of January 1, 2008; and (b) failing to cure the defective condition by repairing or replacing the OnStar systems so that they would continue to offer access to the OnStar service.

65. GM knew of the defect in OnStar systems and has had a reasonable opportunity to cure the defect, but has failed to do so. Instead, GM has notified Plaintiff and Class members that it is not going to repair or replace the defective OnStar systems under its Written Warranties.

66. Affording GM a reasonable opportunity to cure its breach of written warranties would be futile. GM knew, should have known, or was reckless in not knowing of the defect in its OnStar systems, but nevertheless has failed to repair or replace the defective systems free of charge and has stated that it will not repair or replace the defective systems free of charge.

67. As a direct and proximate cause of GM's conduct, Plaintiff and the California Subclass members are entitled to legal and equitable relief against GM, including damages, specific performance, declaratory relief, attorneys' fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

**(For Violation of the California Consumers Legal Remedies Act by Plaintiff Individually and on Behalf of the California Subclass Against All Defendants)**

68. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

69. OnStar systems are "goods" or "services" under Cal. Civ. Code § 1761(a).

70. Plaintiff and other California Subclass members are "consumers" under Cal. Civ. Code § 1761(d).

71. The purchases of GM vehicles containing OnStar systems by Plaintiff and other California Subclass members constitute "transactions" under Cal. Civ. Code § 1761(e).

72. Defendants knew or should have known that existing OnStar systems would become inoperable and obsolete.

73. Defendants intentionally, negligently or recklessly made misleading or deceptive representations concerning the OnStar systems, and concealed from or failed to disclose the pending obsolescence of the analog OnStar systems.

74. Defendants were under a duty to Plaintiff and the California Subclass to meaningfully disclose the pending obsolescence of the OnStar systems. Defendants owed Plaintiff and the California Subclass this duty because: (a) Defendants were in a superior position to know of the impending obsolescence; and (b) Defendants made representations about the quality of the OnStar systems without

revealing their expected longevity, among other things.

75. The facts concealed and/or not disclosed by Defendants to Plaintiff and the California Subclass are material facts in that a reasonable person would have considered these facts to be important in deciding whether to purchase an optional OnStar system, or a vehicle equipped with a OnStar system. Had Plaintiff and members of the California Subclass known that the OnStar systems would become obsolete, they would have altered their decision in some material way.

76. Defendants concealed or failed to meaningfully disclose the impending obsolescence of the OnStar systems. Plaintiff and the California Subclass justifiably relied to their detriment upon the truth and completeness of Defendants' representations about the OnStar systems.

77. Defendants' conduct, as alleged herein, violates the Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a), in that Defendants:

   a. Represented that goods have characteristics, uses or benefits they do not have;
   b. Represented that goods are of a particular standard, quality, or grade when they are of another;
   c. Advertised goods or services with intent not to sell them as advertised;
   d. Represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and
   e. Inserted unconscionable provisions in a consumer contract, including the requirement that Plaintiff and members of the California Subclass submit their claims to arbitration, and that the substantive and procedural claims of Plaintiff and members of the California Subclass are governed by Michigan law, rather than California law.

78. As a direct and proximate cause of Defendants' misconduct, Plaintiff and the California Subclass have suffered harm in that, among other things, (a) the resale value of GM vehicles with OnStar systems has decreased; (b) they cannot use equipment they purchased, i.e., the OnStar systems; and (c) they would not have purchased optional OnStar systems or vehicles equipped with the OnStar system, or, if they purchased a OnStar system or a vehicle equipped with an OnStar system, they would have paid less for the system or the vehicle.

79. Therefore Plaintiff, on behalf of himself and all other members of the California Subclass, seek injunctive and declaratory relief, attorneys' fees and costs of suit, and other non-monetary relief as appropriate.

## SIXTH CAUSE OF ACTION

(For Violation of the California Unfair Competition Law by Plaintiff Individually and on Behalf of the California Subclass Against All Defendants)

80. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

81. Defendants' acts and practices as alleged in this Complaint constitute unlawful, unfair, and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

82. Defendants engaged in unlawful business practices by, among other things:
   a. Engaging in conduct, as alleged herein, that violates the Magnuson-Moss Warranty Act, Song-Beverly Consumer Warranty Act, and the Consumers Legal Remedies Act; and
   b. Engaging in conduct that constitutes fraudulent concealment and nondisclosure.

83. Defendants engaged in unfair business practices by, among other things:
   a. Engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and members of the California Subclass;
   b. Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the California Subclass; and
   c. Engaging in conduct that undermines or violates the stated policies underlying the CLRA, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace, the Magnuson-Moss Warranty Act, the Song-Beverly Consumer Warranty Act, as well as the stated policies underlying the common law, such as fraudulent concealment and nondisclosure.

84. Defendants engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances.

85. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts, business practices, and conduct, Plaintiff and California Subclass members have lost money and property in that, among other things: (a) the resale value of GM vehicles with OnStar systems has decreased; (b) they cannot use equipment they purchased, i.e., the OnStar systems; and (c) they would not have purchased optional OnStar systems or vehicles equipped with the OnStar system, or, if they purchased a OnStar system or a vehicle equipped with an OnStar system, they would have paid less for the system or the vehicle.

86. Plaintiff, on behalf of himself and California Subclass members, seeks equitable relief, including restitution of all monies wrongfully acquired by Defendants as a result of its unlawful, unfair, and fraudulent business practices, and an order enjoining Defendants from engaging in the unlawful, unfair, and fraudulent acts and practices described herein, as well as recovery of attorneys' fees and costs of suit.

## TOLLING OR NON-ACCRUAL OF STATUTES OF LIMITATION

87. Plaintiff, on behalf of the Classes, did not discover the facts constituting Defendants' unlawful business practices until a date within the limitations period governing this action, and promptly exercised due diligence by filing this complaint. Any applicable statutes of limitations have been tolled or have not run because Defendants knowingly and actively concealed the facts as alleged herein. Defendants had actual or constructive knowledge of the wrongful courses of action alleged here. Class members have been kept in ignorance of information essential to the pursuit of their claims, without any fault or lack of diligence on their part.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following prayer for relief, on behalf of himself and class members:

1. An order certifying the Class and the California Subclass, and appointing Plaintiff and his counsel to represent each of these Classes;

2. Injunctive relief as plead or as the Court may deem proper;

3. Declaratory relief as plead or as the Court may deem proper;

4. Damages;

5. Restitution and all other forms of equitable monetary relief;

6. Attorneys' fees and costs of suit, including expert witness fees; and

7. Such other relief as the Court may deem appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: July 16, 2007

Respectfully submitted,

**GIRARD GIBBS LLP**

By: _____
Eric H. Gibbs

Dylan Hughes
Geoffrey A. Munroe
Dan T. LeBel
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative Plaintiff John Irvine