1   Michael R. Ram, CSB #104805
    mfr@lrolaw.com
2   Karl Olson, CSB #104760
    ko@lrolaw.com
3   LEVY, RAM & OLSON
    639 Front Street, Fourth Floor
4   San Francisco, California 94111
    Telephone: (415) 433-4949
5   Facsimile: (415) 433-7311

6   *Attorneys for Plaintiffs Margaret A. Gonzales and*
    *Billy Joe Patton, Jr.*

7   [Additional Counsel Appear on Signature Page]

8

9                    UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                     SAN FRANCISCO DIVISION

11
    MARGARET A. GONZALES and BILLY JOE
12  PATTON, JR., on behalf of themselves and all
    others similarly situated, and one behalf of the        NO. C07-2580 TEH
13  general public,
                                                             PLAINTIFFS' MEMORANDUM OF
14                      Plaintiffs,                           LAW IN OPPOSITION TO
                                                             DEFENDANTS' MOTION TO STAY
15          v.
                                                             CLASS ACTION
16  GENERAL MOTORS CORPORATION, a
    Delaware corporation, and ONSTAR
17  CORPORATION, a Delaware corporation,

18                      Defendants.

19

20

21

22

23

24

25

26

27

1

# TABLE OF CONTENTS

2

Page No.

3

4

I.    INTRODUCTION ........................................................................................... 1

5

II.   FACTUAL BACKGROUND........................................................................... 1

6

III.  LEGAL ARGUMENT ................................................................................... 4

7

      A.   Plaintiffs And Class Members Will Be Substantially
8              Prejudiced By A Stay of the Proceedings........................................... 5

9          B.   Defendants Will Not Suffer Undue Hardship If the
          Action Is Not Stayed ......................................................................... 7

10

11         C.   Judicial Resources Will Not Be Wasted If This Action
          Proceeds............................................................................................ 8

12

IV.   CONCLUSION................................................................................................9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*In re Asbestos Prod. Liab. Litig.,*
    No. 875, 1996 WL 143826 (J.P.M.L. 1996)....................................................................6

*In re Four Seasons Secs. Law Litig.,*
    362 F. Supp. 574 (J.P.M.L. 1973)................................................................................4

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)....................................................................................................4

*Rivers v. Walt Disney Co.,*
    980 F. Supp. 1358 (C.D. Cal. 1997) ...........................................................................7

## STATE CASES

*McKell v. Washington Mut., Inc.,*
    142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227 (2006).......................................................5

*Vasquez v. Super. Ct.,*
    4 Cal.3d. 800, 808, 484 P.2d 964 (1971) ...................................................................5

## DOCKETED CASES

*Boudin v. ATM Holdings, Inc.,*
    No. 07-0018-WSC (S.D. Ala. 2007).............................................................................8

*Chamberlan v. Ford Motor Co.,*
    369 F. Supp.2d 1138 (N.D. Cal. 2005) .......................................................................8

*Falk v. General Motors,*
    No. C-07-01731-WHA, 2007 WL 1970123 (N.D. Cal. 2007)......................................8

*Fischer v. Honda,*
    Case No. CV-07-4303 (ODW) ...................................................................................6

*Haywood v. Volkswagen,*
    Case No. CV-07-4440 ...............................................................................................6

## FEDERAL STATUTES

47 C.F.R. § 22.901......................................................................................................3

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 *et. seq.*...........................................................................1, 5, 6

Cal. Bus. & Prof. Code § 17500 *et. seq*...............................................................................6

Cal. Civ. Code § 1750 *et. seq.*............................................................................................1, 5

Cal. Civ. Code § 1760.............................................................................................................5

Cal. Civ. Code § 1780(a) ........................................................................................................5

## SECONDARY AUTHORITIES

*Manual for Complex Litigation (Fourth)* § 20.131 (2007).....................................................4

## I. INTRODUCTION

Plaintiffs seek to represent a class that is comprised solely of California consumers who purchased or leased vehicles sold by GM with analog-only OnStar Systems. Plaintiffs' claims are different from those being asserted in other courts around the country because they are brought solely under California law, specifically California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et. seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.*

Defendants seek to transfer Plaintiffs' case to an as-yet-unformed MDL court, presumably sitting in Michigan —Defendants' home state. Yet, transfer of Plaintiffs' claims to a court in Michigan makes little sense given that court's unfamiliarity with California law. Indeed, as a federal court sitting in California, this Court is uniquely qualified to address and analyze the claims of this California-only class. Because the legal issues presented in Defendants' pending Motion to Dismiss have recently been determined in two separate cases based on similar facts involving fraudulent omissions to consumers, judicial resources will not be wasted if this case is allowed to proceed and this Court rules on Defendants' Motion to Dismiss.

Plaintiffs and class members will be prejudiced if this case is stayed because any delay in resolving this case increases the safety risk these California consumers face given OnStar's admission that these systems save lives. Because OnStar has notified Plaintiffs that these lifesaving devices will stop working in January 2008, Plaintiffs seek swift resolution of their claims. Plaintiffs respectfully request that Defendant's Motion to Stay be denied.

## II. FACTUAL BACKGROUND

Plaintiffs bring this lawsuit on behalf of a class of people in California who purchased or leased cars, light pick-up trucks, or sport utility vehicles manufactured by Defendant General Motors Corporation ("GM") that were sold with analog-only OnStar Systems and hardware

1  (the "OnStar Vehicles").  OnStar Corporation ("OSC") is a wholly-owned subsidiary of GM

2  engaged in, among other things, the business of providing OnStar services.  Complaint ¶ 1.

3       OnStar is a subscription based safety and security system that provides critical

4  communications links among drivers, emergency medical service providers and emergency

5  dispatch providers, public safety, fire service and law enforcement officials, and hospital

6  emergency and trauma care facilities.  OnStar is only available for use with factory installed

7  OnStar hardware (the OnStar subscription and the OnStar hardware are collectively referred to

8  as the "OnStar System").  *Id.* ¶ 2.  The OnStar System enables owners to:  (1) communicate

9  with central calling centers regarding technical and other safety issues regarding their vehicle's

10  operations; (2) communicate with emergency roadside assistance providers; (3) communicate

11  automatically with OSC when air bags in the vehicle are deployed; (4) track vehicles when they

12  are stolen; (5) remotely unlock doors; and (6) perform certain vehicle diagnostic procedures

13  remotely.  The OnStar System also provides other potential services, including hands-free

14  calling and a variety of information and entertainment services.

15       Beginning in 1996, GM began marketing cars with the OnStar System.  Over time, GM

16  has expanded the models equipped with the OnStar System.  For the 2003 model year, 44 of 60

17  GM models sold in the United States were available with OnStar.  *Id.* ¶ 3.  The OnStar

18  hardware was originally designed to communicate only with analog cellular communications

19  networks.  Beginning with the 2002 model year, GM began installing in some models a version

20  of OnStar hardware designed to be converted from analog to digital cellular communications

21  networks, known as analog-upgradeable.  GM continued to sell many models with analog-only

22  systems that could not be upgraded to digital through the 2004 model year.  *Id.* ¶ 4.

23       In May 2001, the Federal Communications Commission proposed changes to

24  regulations governing cellular service.  The existing regulations required cellular telephone

25  companies to operate an analog cellular communications network in addition to any digital

26  cellular communications network they operated.  The new regulation, adopted September 2002,

27

1    allowed cellular telephone companies to discontinue their analog networks beginning in 2008.

2    47 C.F.R. § 22.901; Complaint ¶ 5.

3        Defendants knew before the final publication of this new rule that this regulatory

4    change would render Plaintiffs' OnStar System obsolete because Defendants knew that any

5    regulatory change affecting analog communications systems would impact OnStar.  Indeed,

6    Defendants participated actively in the rule-making process that led up to the regulatory

7    change, submitting many written comments to the FCC about the impact the change would

8    have on its OnStar customers.  For example, as early as July 2001, Defendants told the FCC

9    that lifting the analog requirement would "potentially jeopardize the lifesaving capability of

10   OnStar," and that "lifesaving and other benefits of the current nationwide system" would be put

11   at risk if the analog requirement were lifted.  *See* Declaration of Beth E. Terrell in Opposition

12   to Defendants' Motion to Stay ("Terrell Decl."), Exs. A and B.

13       Defendants continued to raise concerns with the FCC throughout 2002.  For example, in

14   May 2002, they recommended:

15           [T]hat any change to the analog compatibility standard should
             also take into account the investment by the owners of the current
16           fleet of vehicles with analog [OnStar] systems. . . . [and that] the
             Commission should not take any action that would potentially
17           strand that consumer investment before the owners have an
             opportunity to benefit from the investment for a reasonable
18           period of time considering the average ownership and lease
             periods of vehicles over their product life.
19
20   Terrell Decl., Ex. E.

21       Despite this knowledge, Defendants continued to sell analog-only OnStar Systems to

22   California consumers while actively concealing and failing to disclose to those consumers that

23   in just a few years they would lose the safety and security features they believed they were

24   purchasing when they bought their OnStar vehicles.  Complaint ¶¶ 7, 8.  It was not until 2007

25   that Defendants finally disclosed to California consumers that analog-only OnStar Systems will

26   be completely useless after January 2008. *Id.* ¶¶ 5, 6, 8, 36.  Defendants have never recalled

27   these vehicles in order to provide a suitable repair to this important safety system, nor have

1    they offered to reimburse Plaintiffs and class members who incurred costs relating to the repair
2    or replacement of their OnStar System with a suitable alternative. *Id.* ¶ 9.

### III.  LEGAL ARGUMENT

4          A stay is not automatic when a transfer motion is pending. *Rivers v. Walt Disney Co.,*
5    980 F. Supp. 1358, 1360 (C.D. Cal. 1997).  So long as the district court has jurisdiction over a
6    matter, it has complete discretion to grant or deny a motion to stay. *Landis v. N. Am. Co.,*
7    299 U.S. 248, 254 (1936).  When pendency of a motion to transfer before a Multidistrict Panel
8    gives rise to a motion to stay, "a district judge should not automatically stay discovery,
9    postpone rulings on pending motions, or generally suspend further rulings upon a parties'
10   motion to the MDL Panel for transfer and consolidation." *Rivers,* 980  F. Supp. At 1360; s*ee*
11   *also Manual for Complex Litigation (Fourth)* § 20.131 (2007).  Rule 1.5 of the Judicial Panel
12   on Multidistrict Litigation Rules of Procedure provides:

> [t]he pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the [JPML] concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court, in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

See *In re Four Seasons Secs. Law Litig.,* 362 F. Supp. 574, 575 n.2 (J.P.M.L. 1973) (stating that the pendency of a transfer motion does not "in any way limit the jurisdiction of [the district court] to rule on matters properly presented to it for decision").

          To determine whether a stay is appropriate, the court "must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254–55.  In considering whether to grant a motion to stay, district courts will generally consider:  "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers,* 980 F. Supp. at 1360.  An evaluation of these factors shows that a stay is not warranted in this case.

**A.      Plaintiffs and Class Members Will Be Substantially Prejudiced By a Stay of the Proceedings**

While Defendants argue that all parties will benefit from the efficiencies a stay in this proceeding will provide, they fail to address in any way the prejudicial effect a stay in this matter will have on Plaintiffs who expect California consumer laws to protect them and swift resolution of their case.

Plaintiffs, residents of California, will be substantially prejudiced if they lose the shield provided by California consumer laws, especially as it relates to the complete failure of the "lifesaving" safety features of OnStar analog-only systems. *See* Terrell Decl., Ex. B; *see also* Complaint ¶ 3. Plaintiffs allege Defendants violated two California statutes — the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et. seq.,* and the Unfair Competition Law, ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.* Complaint ¶¶ 49, 64. As the California Supreme Court emphasized in *Vasquez v. Super. Ct.,* 4 Cal.3d. 800, 808, 484 P.2d 964 (1971), the "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of utmost priority in contemporary society." The California Legislature enacted the CLRA and UCL to protect California residents and stop the type of consumer harm committed by Defendants.

The CLRA (Cal. Civil Code § 1750 *et seq.*) permits "*any* consumer who suffers *any* damage as a result of the use or employment by *any* person of a [proscribed] method, act or practice . . . [to] bring an action against that person . . . ." Cal. Civ. Code § 1780(a) (emphasis added). The Legislature intended the CLRA to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Likewise, the UCL is a broad statute that is intended to "protect both [California] consumers and competitors by promoting fair competition in commercial markets for goods and services." *McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1470–1471, 49 Cal.Rptr.3d 227 (2006) citing *Kasky v. Nike, Inc.* 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296

1   (2002). It defines 'unfair competition' to mean and include "any unlawful, unfair or fraudulent

2   business act or practice and unfair, deceptive, untrue or misleading advertising and any act

3   prohibited by [the false advertising law (§ 17500 et seq.) ]." Cal. Bus. & Prof. Code, § 17200.

4   When read together, these statutes protect California consumers from the types of practices

5   committed by Defendants. Granting Defendants' motion would deny Plaintiffs and the class an

6   opportunity for their California claims to be heard by a court familiar with their application.

7   This Court is uniquely qualified to analyze Plaintiffs' claims under these California statutes in

8   the most efficient manner possible given its experience applying them and interpreting their

9   intent.

10          Because Plaintiffs are facing the impending failure of their OnStar safety systems, they

11  will also suffer prejudice because a decision by the JPML could take many months. *See, e.g.,*

12  *In re Asbestos Prod. Liab. Litig.,* No. 875, 1996 WL 143826, at 1 n.2 (J.P.M.L. 1996) (noting

13  "lag time of *at least* three or four months" for ultimate decision on transfer) (emphasis added).

14  The JPML court was assembled in this case on July 23, 2007. Terrell Decl., Ex. F. To date,

15  there is no indication that a determination by the JPML will be made any time in the near

16  future. *Id.* If this action is stayed and subsequently transferred to the JPML, it may be many

17  months before Plaintiffs will even be allowed to tender discovery. Moreover, it is not clear that

18  an MDL will actually be formed. Defendants incorrectly assert that there are 11 pending cases

19  against them in similar matters. Defendants' Motion to Stay at ¶ 2. But two of the cases

20  Defendants reference, *Fischer v. Honda*, Case No. CV-07-4303 (ODW) and *Haywood v.*

21  *Volkswagen*, Case No. CV-07-4440, do not name GM as a defendant, so consolidation is not a

22  mere formality but may require a lengthy deliberation process by the JPML.

23          Even if the JPML decides to consolidate the matter, Plaintiffs would be prejudiced by a

24  stay because, in addition to losing their opportunity to have their California claims heard by a

25  judge familiar with California law, they would wait, unnecessarily, for a decision regarding the

26  sufficiency of their pleadings. Rather than waste judicial resources, this Court would conserve

27

1  judicial resources by denying the stay and at least deciding Defendants' Motion to Dismiss

2  because, unlike any court seated in Michigan, it understands best how to analyze Plaintiffs'

3  California claims and it can go forward immediately.[1]

4      Efficiency and convenience are considerations here, but not at the expense of Plaintiffs.

5  *See Rivers,* 980 F. Supp. at 1360.  On balance, a stay would prejudice Plaintiffs.  Plaintiffs

6  respectfully request that Defendants' Motion to Stay be denied.

7  **B.    Defendants Will Not Suffer Undue Hardship If the Action Is Not Stayed**

8      Defendants fail to even address how they would suffer hardship or inequity if their

9  motion to stay is not granted.  Instead, Defendants' arguments center solely on the convenience

10 a stay would bring them and prematurely assume that the JPML will in fact consolidate these

11 cases.  This Court's decision to deny or grant a motion to stay is based on the *balancing* of the

12 interests of the parties and the court.  *Rivers,* 980 F. Supp. at 1360.  Contrary to Defendants'

13 assertions, motions to stay are not for the sole convenience and benefit of Defendants.  Rather,

14 the test is whether Defendants will suffer hardship or inequity if a stay is denied.  *Id.*  This

15 Court need not decide whether coordinated litigation is in the best interest of Defendants.

16 Rather, it must determine whether the interests of all parties and itself, on balance, favor or

17 disfavor a stay.  Here, Plaintiffs have spent considerable time and effort preparing pleadings for

18 the court that clearly show how Defendants violated the most fundamental tenets of the CLRA

19 and UCL by intentionally selling Plaintiffs and the Class Members defective safety equipment

20 and concealing material information necessary to make an informed decision to purchase and

21 trust Defendants' "lifesaving" OnStar safety system.  Plaintiffs have also spent considerable

---

[1] Defendants' Motion to Stay seeks to prevent Plaintiffs from all relief under the CLRA and UCL.  Defendants hope that an MDL court in Michigan — Defendants' home state — will preside over these claims instead.  Such an outcome will greatly prejudice Plaintiffs and Class Members for all the reasons explained above.  Further, it is much more likely that the JPMDL will certify a California-only class, as opposed to certifying a nationwide class, as currently sought by Michigan plaintiffs, given the choice of law questions that will inevitably arise during nationwide class certification.  Forcing Plaintiffs and Class Members to litigate their claims in Michigan would be extremely prejudicial.

1  time preparing a response to Defendants' Motion to Dismiss[2].  A stay in this matter at this time

2  would waste Plaintiffs' resources, not conserve them, and would, on balance, only serve to give

3  greater strategic advantage to Defendants by forcing Plaintiffs to expend additional

4  unnecessary resources explaining the sufficiency of their claims under California law to a

5  Michigan court unfamiliar with their application.

6      Moreover, Defendants' arguments with respect to the benefits of coordinated discovery

7  and litigation are predicated upon the assumption that the JPML will decide to transfer and

8  coordinate the cases against GM.  Because that issue has yet to be determined, the assumption

9  is premature.

10     In addition, Defendants' arguments assume that coordination of discovery cannot occur

11 in the absence of an MDL proceeding.  This simply is not the case.  Indeed, in another case

12 against GM pending in this Court, GM and Plaintiffs are coordinating discovery between that

13 case and two related cases that are pending in the United States District Courts for the Western

14 District of Washington and the District of Oregon.  Terrell Decl. ¶ 2.  Defendants' argument

15 also incorrectly assumes that there will be no coordination between Plaintiffs in this case and

16 plaintiffs in other cases.  Plaintiffs have already been coordinating with plaintiffs in the other

17 cases and will to continue to do so.

18 **C.    Judicial Resources Will Not Be Wasted If this Action Proceeds**

19     Motions to stay are properly denied when the investment of judicial resources to

20 determine pending motions is minimal.  *Boudin v. ATM Holdings, Inc.*, No. 07-0018-WSC

21 (S.D. Ala. 2007) (citing *Morrisette v. Novastar Home Mortgage, Inc.*, 484 F. Supp.2d 1227

22 (S.D. Ala. 2007)) (motion to stay pending transfer to MDL proceedings denied because

23 resolution of pending motion to dismiss would require a minimal investment of judicial

24 _____

25 [2] As the Court noted in its August 2, 2007 order, Defendants unnecessarily delayed the filing of their Motion to Stay and did not follow efficient procedures to continue the hearing date on its Motion to Dismiss. *See Order Granting Defendants' Application to Shorten Time To Hear Motion To Stay Proceedings*, No. C07-2580 THE. By
26 filing their Motion to Stay on Thursday, August 2, Defendants caused Plaintiffs to waste considerable resources preparing its response, which was due on the following Monday, August 6.

27

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY - 8
CASE NO. C07-2580 TEH
4600/001/208559.1

1  resources given a recent decision within the same district court.).  As in *Boudin*, this Court's

2  recent decisions in *Falk v. General Motors*, No. C-07-01731-WHA, 2007 WL 1970123 (N.D.

3  Cal. 2007)[3] and *Chamberlan v. Ford Motor Co.*, 369 F. Supp.2d 1138, 1145 (N.D. Cal. 2005)[4]

4  disposed of issues so similar to the issues presented in Defendants' Motion to Dismiss that this

5  Court will be able to quickly and efficiently decide whether Plaintiffs' claims sufficiently

6  allege violations of California law.  Terrell Decl., Exs. G and H.

7      There are no efficiencies to consolidating this case or allowing a future MDL

8  proceeding to decide the issues currently before this court, namely the Defendants' Motion to

9  Dismiss.  Any MDL will involve the application of the laws of different jurisdictions and

10  claims under common law.  Plaintiffs' claims, on the other hand, are *strictly statutory*, and

11  based only on California law.  Given this Court's extensive experience applying California law,

12  this court is best suited to decide the issues here.

13      The denial of Defendants' Motion to Stay will fairly balance the interests of all parties

14  by allowing this court to efficiently address Defendants' Motion to Dismiss without delay.

15  ### IV.  CONCLUSION

16      For the foregoing reasons, Plaintiffs respectfully urge this Court to deny Defendants'

17  Motion to Stay.

18      DATED this 13th day of August, 2007.

19      TOUSLEY BRAIN STEPHENS PLLC

21      By: /s/ Beth E. Terrell, CSB #178181
        Beth E. Terrell, CSB #178181
22      bterrell@tousley.com
        Kim D. Stephens, Admitted *Pro Hac Vice*

[3] In Falk, Judge Alsup denied a motion to dismiss almost identical to the one filed by Defendants in this case. Judge Alsup held that Plaintiffs had adequately pled that GM had a duty to disclose material facts concerning a speedometer defect under the CLRA and that GM had committed an unlawful practice under the UCL because it knew that its speedometers were substantially certain to fail and failed to disclose that information to consumers.

[4] In *Chamberlan*, Judge Wilken held that Ford had a duty under the CLRA to disclose the higher incident of failing engine parts to consumers.

1
kstephens@tousley.com
1700 Seventh Avenue, Suite 2200

2
Seattle, Washington 98101-4416
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

3

4
LEVY, RAM & OLSON
Michael R. Ram, CSB #104805

5
mfr@lrolaw.com
Karl Olson, CSB #104760

6
ko@lrolaw.com
639 Front Street, Fourth Floor

7
San Francisco, California 94111
Telephone: (415) 433-4949

8
Facsimile: (415) 433-7311

9
THE MASON LAW FIRM, LLP
Gary E. Mason

10
gmason@masonlawdc.com
1225 19th Street NW, Suite 500

11
Washington, DC 20036
Telephone: (202) 429-2290

12
Facsimile: (202) 429-2294

13
THE MASON LAW FIRM, LLP
Alexander E. Barnett

14
abarnett@masonlawdc.com
1120 Avenue of the Americas, Suite 4019

15
New York, New York 10036
Telephone: (212) 362-5770

16
Facsimile: (917) 591-5227

17
KAHN GAUTHIER SWICK LLC
Kevin L. Oufnac

18
kevin.oufnac@kgscounsel.com
650 Poydras Street, Suite 2150

19
New Orleans, Louisiana 70130
Telephone: (504) 455-1400

20
Facsimile: (504) 455-1498

21
*Attorneys for Plaintiffs*

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Micki S. Singer
Email:  micki.singer@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Market Plaza, Steuart Tower, 8th Floor
San Francisco, California  94105
Telephone:     (415) 781-7900
Facsimile:     (415) 781-2635

Amand K. Mines
Email:  amand.mines@sdma.com
Jacqueline M. Jauregui
Email:  jacqueline.jauregui@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 South Figueroa Street, 19th Floor
Los Angeles, California  90017
Telephone:     (213) 426-6900
Facsimile:     (213) 426-6921

*Attorneys for Defendants*

DATED at Seattle, Washington, this 13th day of August, 2007.


By:  /s/ Beth E. Terrell, CSB #178181
    Beth E. Terrell, CSB #178181
    bterrell@tousley.com
    Tousley Brain Stephens PLLC
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington  98101-4416
    Telephone:  (206) 682-5600
    Facsimile:  (206) 682-2992

*Attorneys for Plaintiffs*